HENRY SCHNACKENBERG, RESPONDENT, v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, APPELLANT.

Argued March 14, 1916—Decided June 19, 1916.

Where the plaintiff, on a dark and foggy morning, approached a railroad crossing with his horse and wagon, and stopped, looked and listened for an approaching train, and after due observation neither heard nor saw one approaching, and the defendant maintained gates and a gateman at the crossing, and the gates were up, and the defendant met the situation thus presented by proof that the approaching engine bell was rung and the approach of the engine was discernible from various points at the crossing—*Held*, that the issue thus presented was one of fact, and was properly submitted to the jury.

On appeal from the Essex County Circuit Court.

For the respondent, *William K. Flanagan.*

For the appellant, *Frederic B. Scott.*

The opinion of the court was delivered by

MINTURN, J. At about four-forty-five o'clock, on a dark and misty morning, on January 25th, 1913, while the plaintiff was driving his horse and bakery wagon on Harrison street, in East Orange, he attempted to cross the defendant's railroad tracks, which cross that street, and in the endeavor his horse and wagon were struck and run down by defendant's locomotive. The horse was killed, and plaintiff suffered serious injuries. Before crossing the track he stopped, looked and listened, and, hearing and observing no evidence of an approaching train, he undertook to cross the track. When the horse reached the eastbound track, the plaintiff observed the engine approaching, and heard the noise incident to its approach, but too late to save himself or his property from the peril which confronted him.

The negligence alleged in the complaint was the failure to give the statutory signals, as well as the failure to lower the gates at the crossing. The proof disclosed that the defendant maintained gates at the crossing as well as a gateman, and that at the time the plaintiff was making his observations, as well as while he was attempting to go over the crossing, the gates were up, and the gateman quiescent in his shanty was apparently oblivious of his environment. There was nothing therefore to indicate to the plaintiff from personal observation, or from defendant's compliance with any statutory requirement to warn the plaintiff that danger was imminent, or that risk and peril encompassed his undertaking.

Furthermore, it was in evidence that besides the fog and darkness of the morning, the situation was complicated by the presence of groups of trees and the usual telegraph poles, located along the line of the track upon which the engine proceeded, so that at the time of plaintiff's observation it was not practicable to discern an object up the track further away than thirty feet. To this was added the element of implied invitation to cross, contributed by the railroad by keeping up its gates instead of lowering them. *Brown* v. *Erie Railroad Co.,* 87 *N. J. L.* 487.

This *prima facie* case manifestly precluded a motion to nonsuit, and none was urged.

The defendant introduced testimony to show that the engine bell was rung at the time, and clarified the situation by introducing a map, together with photographs of the location, and witnesses who testified from observations made in the daytime, and under different climatic conditions, as to distances observable along the track from various points of view at the crossing.

Defendant then moved for the direction of a verdict for the defendant upon the ground of the contributory negligence of the plaintiff, and the absence of any negligence upon the part of the defendant.

The facts here outlined, quite obviously, even upon the basis of the common law rule applicable to such a situation,

presented a question of fact for the jury to decide, and the court quite properly refused to direct a verdict. *Napodensky* v. *West Jersey and Seashore Railroad Co.,* 85 *N. J. L.* 336; *McCoal* v. *West Jersey and Seashore Railroad Co.,* 81 *Id.* 479; *Shafer* v. *Lehigh Valley Railroad,* 75 *Id.* 75.

But when this common law *status* of the plaintiff's case is accentuated by the statutory element of deliction, upon the defendant's part, made apparent by the provisions of the act of 1909, page 137, entitled "An act with reference to the degree of care necessary to be used by travelers over railroad crossings protected by flagmen or safety appliances, or both," it becomes manifest that the failure of the railroad to comply with this regulative enactment, renders the application of the doctrine of contributory negligence, upon a motion to nonsuit, or to direct a verdict, of comparatively negligible importance. *Shafer* v. *Lehigh Valley Railroad, ubi supra; Brown* v. *Erie Railroad Co.,* 87 *N. J. L.* 487.

That act has been declared constitutional by this court. *Fernetti* v. *West Jersey and Seashore Railroad Co.,* 87 *N. J. L.* 268.

Its provisions exempted the plaintiff from the charge of contributory negligence in this situation, even if he failed to stop, look and listen before passing over the crossing; for it is not denied that the gates at the crossing were capable of being operated at the time, and that a gateman was there to operate them, but failed to do so. *Fernetti* v. *West Jersey and Seashore Railroad Co., supra.*

Our examination of the remaining exceptions presented in defendant's brief fails to satisfy us that they are meritorious.

The judgment will therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, TERHUNE, HEPPENHEIMER, WILLIAMS, TAYLOR, JJ. 14.

*For reversal*—None.